Diane KING, Appellant,

v.

Gary KING, Appellee.

No. 61089.

Court of Appeals of Oklahoma, Division No. 4.

Jan. 15, 1985.

Released for Publication by Order of Court of Appeals Feb. 11, 1985.

William P. Huckin, Jr., Tulsa, for appellant.

Gene Dennison, Skiatook, for appellee.

BRIGHTMIRE, Presiding Judge.

Does the evidence of extrinsic fraud support the trial court's modification of the divorce decree? We hold it does.

## I

After six years of marriage the childless couple was divorced May 11, 1982, at the request of the woman.

On April 19, 1983, the man filed a verified petition asking the court to modify the decree under the authority of 12 O.S.1981 §§ 1031(4) and 1033. More specifically, the man alleged that the decree ordered the home of the parties sold and the equity realized split equally between the parties. The man said that he was not present when the decree was rendered and, though he had signed a waiver summons and notice of hearing, he did so at the request of the woman, who agreed to seek only $6,000 for her share of the equity in the house, payable when the house was sold. He was further alleged to have been induced to sign the waiver by the promise of the woman's lawyer to send him a copy of the proposed decree for his approval before having a judgment entered.

The woman's answer does not contain a general denial but does allege that the decree correctly set out the parties' pre-decree agreement. The woman stated that before the hearing she tried to contact the man but could not find him either at work or at home. She further said that her counsel sent a copy of the decree to the man with a request to contact him if it was not in accordance with the parties' agreement, and that defendant never made any complaint and is therefore guilty of laches.

The case was heard and on September 2, 1983, the court found that defendant had made known to the woman his desire to be present at the hearing and his whereabouts were known to her and that the parties' pre-decree agreement was that the woman was to receive $6,000 as her share of the equity in the house, payable at no certain time. The court then ordered the property division part of the decree modified to reflect what he found to be the agreement and further ordered the house sold to satisfy the $6,000 payment or, in the alternative, the man to deliver a certified check for $6,000 to the woman within 90 days.

## II

The woman first contends that the evidence does not justify the trial court's modification because (1) there was no specific finding made that the woman or her lawyer practiced any fraud in procuring the decree; (2) the evidence, consisting of undisputed facts, was clear and convincing that no such fraud was committed by either of them; (3) the terms of the decree were fair and equitable; (4) the man's failure to timely complain about the decree to the woman's lawyer, coupled with waiting for nearly a year before challenging the decree, indicates its terms were exactly as had been explained to him.

### A.

■ With regard to the first point, it is true the trial court's order does not make a specific finding using the term fraud—perhaps to ameliorate feelings—but his order does allude to the issues formed by the petition and answer and to a finding that the woman knew where the man was; that she knew he wanted to be present at the divorce hearing; and that the decree did not correctly embody the agreement of the

parties. While the order—which apparently was prepared by the trial judge himself—could have been more detailed and specific, it does, when read as a whole, implicitly inform the reader of the trial judge's conclusion that the decree did not correctly reflect the pre-decree agreement of the parties and that the man was induced to sign an appearance and waiver of notice upon the representation that the woman would let him know when the matter would be heard and that he would receive a copy of the proposed decree in advance of the hearing for his approval. The facts here present a classic case of extrinsic fraud essential to invoking the provisions of 12 O.S.1981 § 1031(4)—pretrial conduct, including false representation, of the successful party which prevents defeated party from fully and fairly presenting his side of the controversy. *Britton v. Gannon,* 285 P.2d 407 (Okla. 1955).[1]

We hold the trial court's findings are sufficient to support the granting of relief.

### B.

The woman's second reason—that the evidence clearly and convincingly demonstrates no extrinsic fraud was committed—is really not the issue involved, although we will consider it as stated. The real issue is whether the clear weight of the evidence supports the trial court's finding of such fraud preventing the man from having his day in court.

The man testified that sometime before the divorce was granted, his wife called and told him that her lawyer wanted to see him. He went to the lawyer's office at the appointed time. The lawyer was friendly and told him he had a right to get an attorney. First the waiver of summons was discussed.

"Then he (the lawyer) went over some decree and he said that, was [sic] reading off the part that we agreed to split things and she would get half of the equity in the house and I stopped him then and told him, no, that we already agreed that she would get six thousand dollars and he told me that's between you two. Then he looked over to her and asked her if that was correct and she said, yes, we've agreed on that.... and I told him this, that the six thousand dollars was going to come by me paying off her car. Which at the time her car was six thousand and eighty-three dollars. That's why we agreed on the six thousand dollars."

The man said the lawyer asked him if he would be at the hearing and "I said, 'yes, I want to be there.' Then he told me that they would notify me."

The woman admitted such a conference was held in her attorney's office. However, with regard to the property settlement she said, "We talked about it but I can't remember exactly what was said, you know, to sell the house and divide the profits, you know, fifty-fifty."

With regard to notice, the woman said the man did not say anything about being present when the divorce was granted. She did recall, though, that her attorney advised him he could be or should be present, but as to who was to notify him of the hearing date she said, "I don't really think it was discussed...."

Nevertheless, the woman said she did try to notify the man of the hearing. She said, however, that she did not learn until Friday morning or afternoon that the case was set for hearing the following Tuesday. Even so, she waited until Monday to begin trying to notify the man. "We came to Court on a Tuesday," she said, "so I tried all day Monday, Monday evening and before I came to Court on Tuesday." In this regard, the man said he was at work Thurs-

---

**1.** We should state in this connection that the record does not contain evidence or even a suggestion that the woman's lawyer participated in the wrongdoing or did anything improper in representing his client. As a matter of fact, we consider the fraud involved even on the part of the litigant to have been technical in nature and a result of overzealousness rather than of evil perpetration. Constructive fraud arising from breach of a duty to speak is sufficient to support the vacation. *Girkin v. Cook,* 518 P.2d 45 (Okla. 1973).

day and Friday and in town the next few days.

We think it is clear and convincing that the woman knew the man wanted to be present at the hearing and that she did not make the effort she should have to notify him as she agreed she would.

### C.

The woman's third objection to the modification is that the terms of the original decree were fair and reasonable. Aside from the fact that it does not seem to be relevant to the pivotal issues of (1) whether the terms were in accord with a pre-decree agreement of the parties; and (2) whether the man was a victim of extrinsic fraud preventing him from being heard, the issue is closely related to the woman's second proposition and therefore it will be considered as a dispositional adjunct of that contention.

### D.

As her fourth and final reason why the modifying order should be vacated, the woman focuses on the man's nine-month delay in doing anything about the decree.

In response to this attack the man said he first learned that the parties had been divorced when he came home the Tuesday it was granted. "I came home on a Tuesday," he said, "and Diane was there picking up some stuff and said, 'You missed the Court date we've already had it.' I was kind of upset a little bit, but then she said everything went just as planned so I didn't worry about it until I got the decree in the mail" a week or so later and discovered it was not the way he understood it was going to be.

He immediately called the woman and "I asked her why she done this and she said she didn't know nothing about it, that everything was the way we planned it." Apparently he received no satisfactory answer. Later on that night, about 11:00 o'clock, he said, "I was in bed and ... I still couldn't understand why she done that so I got up and went to where she lived ...

with a friend in Turley." They stepped outside the house and talked. "I asked her why she done that and she said she didn't know why her lawyer had done that. After we discussed that finally she said, 'I thought I deserved more.' And we discussed it further that we had agreed on the six thousand dollars and this is why I didn't get a lawyer because I thought we could agree on something. She said, 'Well, I just thought I deserved more.' I said, 'I'm just going to pay you six thousand dollars.' She said, 'Fine, just pay me the six thousand dollars and don't worry about the rest.' So I didn't worry about anything else."

No further problem arose until nine months later, February 1983, when the man applied for a loan secured by a second mortgage on the house. The mortgage company required a "release" from the woman. The man asked her to sign a quitclaim deed and told her the mortgage company had agreed to issue her a check for $6,000 in exchange for the deed. The woman refused to sign the deed, thus creating the foundation for this action.

We cannot say the court erred in rejecting the woman's claim of laches under the circumstances. The decree contained no order for him to act and certainly no time limits. No doubt the best course of action would have been to seek immediate modification of the decree. But this would have entailed more time and expense which seemed to have been obviated by the woman's agreement to settle for $6,000. Ultimately, when it became clear that the woman would not settle for $6,000, the man did promptly take the matter to court.

■ The woman does not deny that all this post-decree conversation and activity took place. Nor did she undertake to show she altered her position or suffered any prejudice by the nine-month delay. Indeed, if what the man says is true, she lulled him into inaction by saying she would settle for $6,000 notwithstanding the terms of the decree.

We find no merit in the woman's first proposition.

## III

For her second proposition, the woman contends that even if a modification of the decree was permissible, the new terms are neither equitable nor fair to the woman. The only reason assigned for this conclusion is that the woman is said to have received less than half of the marital estate.

This issue was neither pleaded nor tried in the trial court. More importantly, the woman did not attack the husband's version of the property settlement agreement as unfair. Admittedly the parties executed it in part by dividing everything except the home equity before the divorce was granted. She offered no evidence as to what the marital assets consisted of, and none concerning the gross value of the marital estate or of its net value. There is reference to various assets and debts scattered throughout the record, but the focus of the evidence is on the issues of extrinsic fraud and the substance of the pre-decree property settlement agreement. Such circumstances as these ordinarily foreclose appellate review of a matter, and in the author's view should in this case.

 The majority of the panel do not agree with this view, however, but are of the opinion that the trial court fundamentally erred in limiting himself to the issue of what pre-divorce property agreement the parties entered into, and instead he should have considered the entire marital estate and divided the property equitably.

## IV

The judgment appealed is therefore affirmed insofar as it vacates the property division order of the original decree, but reversed as to the second property division order. The cause is remanded with directions to determine and make an equitable division of the marital estate.

STUBBLEFIELD, J., and MEANS, J. (sitting by designation), concur.